(25 Misc. Rep. 707.)

PETZOLT v. THIESS et al.   DUNN v. SAME.   DE FRIES v. SAME.
BRAND v. SAME.   McKAY v. SAME.   GREEN v.
SAME.   NEGEL v. SAME.

(Supreme Court, Appellate Term.   January 23, 1899.)

**1. MASTER AND SERVANT—RELATION—LANDLORD AND TENANT.**

A lease of a music hall provided that the lessee should pay an annual rental, in addition to profits of subletting certain privileges; that, as security, the lessors were to receive all the moneys realized from the business conducted on the premises, and, to that end, both parties were to designate a cashier and bookkeeper, at a salary to be agreed on, and which was to be considered as an expense of the business, whose duty it was to be custodian of the moneys, same to be deposited in the name of the music hall, and drawn against by the cashier and bookkeeper to meet expenses, and to pay a designated amount weekly to the lessors on account of rent, and an equal amount to the lessee. to be charged against him on account of what he was to receive after paying rent and expenses; that an accounting should be had, to determine the amount each should receive; that, "as further security for the good management of the business * * * so as to insure the payment of the rent," no person should be hired or discharged, or expenditures incurred, by the lessee, without the consent of lessors; that nothing therein contained should be construed to make the parties partners; and that the business should be under the sole management of the lessee. *Held*, that the lessors were not the employers of persons hired to perform services for the benefit of the business.

**2. SAME—EVIDENCE.**

In an action for services rendered for the benefit of the business of a music hall, against the lessors of the hall, on the theory that they, and not the lessee, were the actual proprietors thereof, testimony given by one of the lessors three months before the execution of the lease, relating to a sale of the business and fixtures at a time not specified, to the effect that, as the consideration had not been paid, she and her co-lessor had taken back the business, and were still the owners, not followed by proof of the time of the occurrence, or the nature of the transaction, is not sufficient, as an admission, to support a judgment for plaintiffs.

Appeal from municipal court, borough of Manhattan, Fourth district.

Action by Edward Petzolt, consolidated with those of William Dunn, Cora De Fries, Fritz Brand, John McKay, Edward Green, and Franz Negel, against Katie Thiess and Alice N. Thiess.   Judgment was rendered for plaintiffs, and defendants appeal.   Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Fromme Bros., for appellants.
Guy C. Frisbie, for respondents.

BEEKMAN, P. J.   These actions are brought to recover wages by various persons who were engaged as employés at the Alhambra Music Hall, of which it is claimed that the defendants were proprietors, and as such the employers of the plaintiffs.   The cases were tried together, each of the plaintiffs testifying in support of his claim.   Very little evidence was given tending to show that there was any direct employment by either of the defendants.   At all events, such evidence was not considered by the trial justice, who, without any dissent on the part of counsel on either side, caused what is styled a "stipulation" to

be entered on the minutes, containing, among other provisions, the following:

"It is agreed that the plaintiffs in these cases ask the court for a judgment in their favor against the defendants on the theory that the defendants were the proprietors of the business, and that their services went to its benefit. The plaintiffs do not in any one case contend that the defendants are liable because of any personal hiring by the defendants of the plaintiffs."

It appears from the record that the defendants, being owners of the premises, with its equipment, for the purposes of a music hall, entered into a written lease, bearing date November 13, 1897, under which they leased the same to William F. Grote for a specified term, at a fixed annual rental of $12,000 a year, in addition to what might be realized by the lessee from the subletting of certain privileges. The lease contains elaborate provisions, which may be briefly summarized as follows: It was provided that, "as security to the said parties of the first part [the lessors] for the said rental," they were to receive all the moneys received from the business conducted upon the premises; and, to that end, both parties to the lease were to designate a person as cashier and bookkeeper, at a salary that was to be agreed upon, and which was to be considered as an expense of the business, whose duty it was to be the custodian of the moneys so received. Such moneys were to be deposited in the name of the Alhambra Music Hall, to be drawn against by the cashier and bookkeeper to meet the current bills against the business, and to pay the amounts which the lessors and lessee were to receive as provided in the lease. Each of the lessors was entitled to receive each and every week the sum of $30 on account of the rent, and the lessee was also to receive a like sum of $30 per week, to be charged against him, on account of what he was entitled to receive after the rent and expenses had been paid. An accounting between the parties was subsequently to be had, upon the basis of the lease, for the purpose of determining the entire amount which each should receive. It was also provided, "as further security for the good management of the business to be conducted on the premises hereby leased by the party of the second part so as to insure the payment of the rent," that no person should be hired or discharged, or expenditures incurred, by the lessee, without the consent of the lessors first had and obtained. The lease contained the further stipulation that nothing therein contained should be construed to make the parties thereto co-partners, and that the business should be "under the sole management of the said party of the second part, as lessee." Associated with this was a provision that, whenever it should be deemed that the business was not properly managed by the lessee, matters in dispute should be referred to certain arbitrators mentioned in the lease, for their decision.

According to the testimony of Grote, he had been in possession of the premises in question for about a year before under a similar lease. It also appears that the liquor-tax certificate and the concert-hall license, which were necessary for the purpose of legalizing the business, had been taken out by him. Evidence was given by him, which was introduced for the purpose of supporting a claim on the part of the plaintiffs that the lease was merely colorable, that the defendants were the real proprietors of the business, and were carrying it on for their

own benefit, although in his name, and that, at most, he was only the manager of the same for them, and on their account. His evidence, however, is not sufficient to support this claim. Of course, it was competent for the plaintiffs to show that there was some understanding or agreement between the parties to that effect. The rule which forbids the introduction of parol evidence to vary or modify the terms of a written instrument is not applicable to a stranger to the writing, where, for the purpose of ascertaining his rights, it becomes important to determine what the true relations were between the parties to the instrument. No evidence, however, was given as to what took place between Grote and the lessors, or their duly-authorized representative, tending to show that their relations were to be otherwise than such as the lease itself imports. Upon the face of the lease, it is apparent that all that the lessors were to receive was the rental which was prescribed, and all the moneys which were to be paid to them were chargeable against them on account of such rental. Although reserving to themselves a considerable measure of control over the manner in which the business was conducted, none of the provisions in that regard constituted them employers of the plaintiffs. It is true that no person was to be hired or discharged, or other expenses incurred, by the lessee, without the consent of the lessors, but that did not make them the employers of persons who might be hired. It was simply a limitation upon the right of the lessee to incur certain classes of expenditure, imposed for the purpose of securing such action on his part as would insure good management, and consequent enhancement of the receipts from the business, which were to be impounded, under the terms of the lease, as security for the payment of the rent.

The testimony given by the defendant Kate Thiess before a referee in another proceeding, which is claimed to be an admission on her part that she and her sister were the actual proprietors of the hall, is not, we think, sufficient of itself to support the plaintiffs' claim. Her testimony was given in August, 1897, some three months before the execution of the lease which is in evidence; and, furthermore, she was testifying with respect to a sale which had been made of the good will of the business, and the fixtures and equipment connected therewith, at some time which is not specified, and her statement was that, as the consideration had not been paid, she and her co-defendant had taken back the business, and were still the owners. Had the evidence in question been followed up by proof respecting the time of the occurrence and other matters disclosing the real character of the transaction to which she referred, the precise nature and force of the admission would have become apparent; and, if it was inconsistent with the lease, the admission, so far as Kate Thiess was concerned, would have been most important. As the proofs stand, however, we do not think that the alleged admission is sufficient to support the judgment which the trial court has rendered against the defendants. Upon the evidence as it stands, we are constrained to hold that the plaintiffs have failed to show that they were in the employment of the defendants, and the judgments rendered in their favor must therefore be reversed.

Judgments reversed, and new trials ordered, with costs to the appellants to abide the event. All concur.